UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
FRANCIS ROSARIO FIORANTE,

                Plaintiff,              **MEMORANDUM OF
                                                      DECISION & ORDER**
           -against-               2:16-cv-05731 (ADS)

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
----------------------------------------------------------X

**APPEARANCES:**

**Joseph C. Stroble**
*Attorney for the Plaintiff*
40 Main Street
Sayville, NY 11782
      By:     Joseph C. Stroble, Esq., Of Counsel

**United States Attorney's Office for the Eastern District of New York**
*Attorneys for the Defendant*
271 Cadman Plaza East
Brooklyn, NY 11201
      By:     Peter W. Jewett, Assistant United States Attorney

**SPATT, District Judge**:

The Plaintiff Francis Rosario Fiorante (the "Plaintiff") commenced this this civil action pursuant to the Social Security Act, 42 U.S.C. § 405 *et seq.* (the "Act"), challenging a final determination by the Defendant, the Commissioner of Social Security (the "Defendant" or the "Commissioner"), the acting commissioner of the Social Security Administration (the "Administration") at the time of filing, that he is ineligible to receive Social Security disability insurance benefits.

Presently before the Court are the parties' cross motions. The Plaintiff has moved for summary judgment pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P." or "Rule") 56,

and the Commissioner has moved for a judgment on the pleadings pursuant to Rule 12(c). For the reasons that follow, the Plaintiff's motion is denied, and the Commissioner's motion is granted.

## I. BACKGROUND

On September 19, 2014, the Plaintiff applied for disability benefits, alleging that he became disabled on June 9, 2011 as a result of a heart condition, a heart attack, a back injury, depression, and a herniated disc.

On January 13, 2015, the Administration denied his claim, and the Plaintiff requested a hearing.

On January 28, 2016, Administrative Law Judge Alan B. Berkowitz (the "ALJ") conducted a hearing during which the Plaintiff was represented by counsel.

On February 19, 2016, the ALJ issued a written decision denying the Plaintiff's claim. The ALJ found that the Plaintiff had not engaged in substantial gainful activity from his alleged onset date of June 9, 2011 through his last insured date of December 1, 2014. The ALJ determined that the Plaintiff suffers from a number of substantial impairments including lumbar and cervical spine disorders, coronary artery disease status post myocardial infarction, hypertension, hyperlipidemia, and depressive disorder. However, the ALJ found that these impairments do not meet or medically equal any listed impairment.

The ALJ determined that the Plaintiff has the residual functional capacity to perform sedentary work, except that he could only sit for thirty minutes before needing a two minute break to reposition his body; could occasionally bend, squat, crouch, kneel and crawl; was limited to low stress jobs; and could not be exposed to dangerous heights or machinery. The ALJ found that the Plaintiff could not perform his past relevant work, but based on the vocational expert's testimony, determined that there were a significant number of jobs in the national economy that the Plaintiff

could perform.  Because the Plaintiff could perform work for which there exists a significant number of position in the national economy, the ALJ determined that the Plaintiff is not disabled. The Plaintiff subsequently requested a review by the Appeals Council.

On June 10, 2016, the Appeals Council granted the Plaintiff's request for review, but on August 10, 2016, the Appeals Council found that the Plaintiff is not disabled and adopted the majority of the ALJ's decision.  The Appeals Council merely found that the ALJ had incorrectly determined the Plaintiff's last insured date.  The Appeals Council adopted the remainder of the ALJ's decision.  The Appeals Council's decision was the final decision of the Commissioner.

On October 14, 2016, the Plaintiff commenced the instant action.  The Plaintiff filed his motion for summary judgment on June 19, 2017, and the Commissioner filed her motion for a judgment on the pleadings on November 2, 2017.  The motions were fully briefed on November 2, 2017.

For purposes of these motions, familiarity with the underlying administrative record is presumed. The Court's discussion of the evidence will be limited to the specific challenges presently raised by the Plaintiff. In this regard, references to the record are denoted as "R."

## II.  DISCUSSION

### A.  The Applicable Law

While the Act was amended effective March 27, 2017, the Court reviews the ALJ's decision under the earlier regulations because the Plaintiff's application was filed before the new regulations went into effect.  *See Lowry v. Astrue*, 474 F. App'x 801, 805 n.2 (2d Cir. 2012) (applying and referencing the version of the regulation in effect when the ALJ adjudicated the plaintiff's claim); *Michael Barca, Plaintiff, v. Comm'r of Soc. Sec., Defendant.*, No. 2:16-CV-187, 2017 WL 3396416, at *8 (D. Vt. Aug. 8, 2017) (same); *Alvarez v. Comm'r of Soc. Sec.*, No.

14CV3542(MKB), 2015 WL 5657389, at *11 n.26 (E.D.N.Y. Sept. 23, 2015) ("[T]he Court considers the ALJ's decision in light of the regulation in effect at the time of the decision." (citing *Lowry*, 474 F. App'x at 805 n.2)).

The Act defines the term "disability" to mean an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." *Burgess v. Astrue*, 537 F.3d 117, 119 (2d Cir. 2008) (quoting 42 U.S.C. § 423(d)(1)(A)) (quotation marks omitted). In addition, "[t]he impairment must be of 'such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" *Shaw v. Chater,* 221 F.3d 126, 131–32 (2d Cir. 2000) (quoting 42 U.S.C. § 423(d)(2)(A)).

In determining whether a claimant is disabled, the Commissioner is required to apply the five-step sequential process set forth in 20 C.F.R. § 404.1520. *Rosa v. Callahan,* 168 F.3d 72, 77 (2d Cir. 1999). The claimant bears the burden of proving the first four steps, but then the burden shifts to the Commission at the fifth step. *Rosa,* 168 F.3d at 77. First, the Commissioner considers whether the claimant is presently working in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i); *Rosa,* 168 F.3d at 77. If the claimant is not so engaged, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii); *Rosa,* 168 F.3d at 77. If the severity requirement is met, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in Appendix 1 of the regulations, or is equal to a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. Part 404, Subpart P, Appendix 1; *Rosa,* 168 F.3d at 77. If the claimant has such an impairment, there will be a finding of disability. If

4

not, the fourth inquiry is to determine whether, despite the claimant's severe impairment, the claimant's residual functional capacity allows the claimant to perform his or her past work. 20 C.F.R. § 404.1520(a)(4)(iv); *Rosa,* 168 F.3d at 77. Finally, if a claimant is unable to perform past work, the Commissioner then determines whether there is other work, such as "light work" discussed *infra,* that the claimant could perform, taking into account, *inter alia,* the claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v); *Rosa,* 168 F.3d at 77.

**B. The Standard of Review**

"Judicial review of the denial of disability benefits is narrow" and "[t]he Court will set aside the Commissioner's conclusions only if they are not supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Koffsky v. Apfel*, 26 F. Supp. 475, 478 (E.D.N.Y. Nov. 16, 1998) (Spatt, J.) (citing *Bubnis v. Apfel*, 150 F.3d 177, 181 (2d Cir. 1998)).

Thus, "the reviewing court does not decide the case *de novo.*" *Pereira v. Astrue*, 279 F.R.D. 201, 205 (E.D.N.Y. 2010). Rather, "the findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive," *id.*, and therefore, the relevant question is not "whether there is substantial evidence to support the [claimant's] view"; instead, the Court "must decide whether substantial evidence supports *the ALJ's decision.* " *Bonet v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (emphasis in original). In this way, the "substantial evidence" standard is "very deferential" to the Commissioner, and allows courts to reject the ALJ's findings "only if a reasonable factfinder would *have to conclude otherwise.*" *Brault v. SSA*, 683 F.3d 443, 448 (2d Cir. 2012) (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994) (emphasis in original)). This deferential standard applies not only to factual determinations, but also to inferences and conclusions drawn from such facts." *Pena v. Barnhart*, No. 01-cv-502, 2002 U.S. Dist. LEXIS

21427, at *20 (S.D.N.Y. Oct. 29, 2002) (citing *Levine v. Gardner*, 360 F.2d 727, 730 (2d Cir. 1966)).

In this context, "[s]ubstantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Burgess*, 537 F.3d at 128 (quoting *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004)). An ALJ's findings may properly rest on substantial evidence even where he or she fails to "recite every piece of evidence that contributed to the decision, so long as the record 'permits [the Court] to glean the rationale of [his or her] decision.'" *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)). This remains true "even if contrary evidence exists." *Mackey v. Barnhart*, 306 F. Supp. 337, 340 (E.D.N.Y. 2004) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998), for the proposition that an ALJ's decision may be affirmed where there is substantial evidence for both sides).

The Court is prohibited from substituting its own judgment for that of the Commissioner, even if it might justifiably have reached a different result upon a *de novo* review. *See Koffsky*, 26 F. Supp. at 478 (quoting *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991)).

**C. Application to the Facts**

The Plaintiff contends that the ALJ erred in affording less weight to the opinion of the Plaintiff's treating physician, Dr. Richard Lee ("Dr. Lee"), who said that the Plaintiff would need to take unscheduled breaks throughout the day and miss up to three days a month; and that the ALJ's assessment of the Plaintiff's residual functional capacity ("RFC") is not supported by substantial evidence.

**1. As to whether the ALJ Erred in Assigning Less Weight to Dr. Lee's Statements Regarding the Plaintiff's Need for Breaks and Absences**

Under 20 C.F.R. § 404.1527(c) ALJs are required to weigh and evaluate "every medical opinion." When assigning weight to a medical opinion, ALJs consider the following factors: the nature of the examining relationship; whether or not the medical opinion was made by a treating source; length of treatment relationship and frequency of examination; supportability; consistency; specialization; and "other factors . . . which tend to support or contradict the opinion." 20 C.F.R. § 404.1527(c); *see also Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013).

Controlling weight can be given to "a treating source's medical opinion on the issue(s) of the nature and severity" of the claimant's impairments if the medical opinion is "well supported by . . . other substantial evidence . . . ." 20 C.F.R. § 404.1527(c)(2). When a treating source's medical opinion is not supported by substantial evidence, the opinion will not be afforded controlling weight. *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). Where an ALJ declines to give controlling weight to a treating physician's opinion, he must provide "good reasons" for doing so, and must consider the above factors in determining the weight to afford to the opinion. 20 C.F.R. § 404.1527(c)(2) ("When we do not give the treating source's medical opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the medical opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion.").

On March 16, 2016, Dr. Lee indicated in a letter that the Plaintiff had a history of coronary artery disease, hypertension, kidney stones, and herniated discs, which required multiple medications. He stated that the Plaintiff's conditions and medications had limited his activity since his myocardial infarction in 2011. The ALJ ascribed some weight to this opinion, stating that it

was consistent with the record as a whole. However, the ALJ noted that Dr. Lee did not provide a function-by-function assessment of the Plaintiff's abilities to perform work.

On October 14, 2015, Dr. Lee completed a cardiac impairment questionnaire. He noted that he saw the Plaintiff every three months. Dr. Lee opined that the Plaintiff could lift up to ten pounds occasionally; sit for six or more hours in an eight-hour day; stand and walk up to two hours in an eight-hour day; would experience pain, fatigue, or other symptoms severe enough to interfere with his attention and concentration up to one-third of an eight-hour workday; would need to take unscheduled breaks of unknown duration and frequency throughout an eight-hour workday; and would likely be absent two to three times per month.

The ALJ afforded great weight to Dr. Lee's opinion, except for the portion of the opinion dealing with breaks and absences. As to those statements the ALJ stated that they "were not supported by diagnostic testing showing an ejection fraction of 60-65 percent and essentially unremarkable physical examinations." (R. at 32). The ALJ also noted that Dr. Lee stated in his treatment notes that the Plaintiff reported no distress with minimal effort, and that the Plaintiff only experienced shortness of breath when he overexerted himself.

The Appeals Council noted that Dr. Lee did not examine or treat the Plaintiff before his insurance expired, and therefore did not examine him during the relevant period; and that Dr. Lee provided minimal treatment records without significant findings.

The ALJ assigned great weight to the opinion of the consultative examiner, Dr. Andrea Pollack ("Dr. Pollack"). Dr. Pollack examined the Plaintiff on December 26, 2014. The Plaintiff reported that he was able to shower and dress himself, and that he spent his time watching television and listening to the radio. He was not in any acute distress; had a normal gait; squatted two-thirds of the way down; and did not need help rising to or descending from the changing table.

Dr. Pollack opined that the Plaintiff had a marked restriction in lifting, carrying, pushing, and pulling; a mild to moderate restriction in squatting and bending; a mild restriction in walking, standing, sitting, and climbing stairs; and that he should avoid activities which require heavy exertion. The ALJ found that Dr. Pollack's opinion was consistent with the record as a whole.

The Appeals Council noted that Dr. Pollack examined the Plaintiff within a week of his last date of being insured, and provided a detailed examination report. The Appeals Council further noted that the examination's findings were benign, and that they supported the ALJ's decision. Based on the fact that Dr. Pollack examined the Plaintiff during the relevant period, and Dr. Lee did not, the Appeals Council found that Dr. Pollack's opinion was entitled to greater weight than Dr. Lee's opinion.

State agency medical consultant Dr. W. Wells ("Dr. Wells") found that the Plaintiff could lift or carry up to ten pounds frequently and twenty pounds occasionally; sit, stand, or walk up to six hours in an eight-hour workday; and occasionally climb, balance, stoop, kneel, crouch, and crawl. The ALJ afforded less weight to Dr. Wells' opinion because he did not examine the Plaintiff or consider evidence that was submitted at the hearing which showed that the Plaintiff has greater limitations than those prescribed by Dr. Wells.

The ALJ did not err when he discounted Dr. Lee's statements regarding the Plaintiff's attention and concentration or need for breaks and absences because it was unsupported by his treatment notes, the objective medical evidence, and Dr. Pollack's opinion.

As the ALJ pointed out, Dr. Lee's treatment notes showed that the Plaintiff repeatedly denied experiencing dizziness or headaches, and did not have any psychiatric complaints. (R. at 722, 727). The Plaintiff told Dr. Lee that he felt no distress with minimal effort, and only experienced shortness of breath when he overexerted himself. (R. at 727). Therefore, the ALJ

9

was entitled to discount Dr. Lee's opinion as to the Plaintiff's attention, concentration, and need for breaks and absences. *See Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 7–8 (2d Cir. 2017) (summary order) (holding that a court can give less weight to a treating source's medical opinion where the treatment notes contradict the opinion); *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (summary order) (holding that the ALJ was not required to give controlling weight to treating physicians' medical opinions where the treatment notes included unremarkable clinical findings that contradicted or failed to support the limitations in the opinions).

Similarly, Dr. Shahram Hormozi ("Hormozi"), a cardiologist, noted that the Plaintiff experienced fatigue and dyspnea on exertion. (R. at 261, 331). When the Plaintiff was treated at the emergency department at St. Catherine of Siena Medical Center, the physician noted the Plaintiff was not experiencing chest pain or shortness of breath. The Plaintiff stated that he "felt fine." (R. at 504). Dr. Pollack also noted that the Plaintiff has shortness of breath on exertion. Treatment notes of non-treating physicians can be used to discount the opinions of a treating physician. *See Camille v. Colvin*, 652 F. App'x 25, 28 (2d Cir. 2016) (summary order) (holding that the treatment notes of other doctors can be relied upon to override the medical opinion of a treating physician). While the ALJ did not specifically reference these notes when he discounted Dr. Lee's opinion, the Second Circuit has not required that an ALJ recite every piece of evidence that supported his or her decision. *See Petrie v. Astrue*, 412 F. App'x 401, 406 (2d Cir. 2011) ("[W]here the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." (internal citations and quotations omitted)).

In addition, the ALJ and the Appeals Council were entitled to rely and give great weight to the opinion of the consultative examiner, Dr. Pollack, because it was consistent with the evidence as a whole and with Dr. Lee's treatment notes. *See, e.g., Smith v. Colvin*, 17 F. Supp. 3d 260, 268 (W.D.N.Y.2014) ("[T]he opinions of consulting sources 'may constitute substantial evidence if they are consistent with the record as a whole.' This is particularly so where the consultant directly examines the applicant." (quoting *Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 79 (N.D.N.Y. 2005))); *Vanterpool v. Colvin*, No. 12-CV-8789 VEC SN, 2014 WL 1979925, at *16 (S.D.N.Y. May 15, 2014) (finding the ALJ did not err in affording greater weight to the opinion of the consultative physician where the opinion was more consistent with the treating physician's medical records).

As to the Plaintiff's argument that the ALJ erred in discounting Dr. Lee's opinion by relying on the Plaintiff's ejection fraction, the Court finds that the ALJ was permitted to consider such evidence and did not make his own medical findings in considering such evidence.

The ALJ pointed out that Dr. Lee's opinion conflicted with the Plaintiff's ejection fraction of 60-65 percent which is normal. It is the responsibility of the ALJ to resolve conflicting medical evidence. *See Richardson v. Perales*, 402 U.S. 389, 399, 91 S. Ct. 1420, 1426, 28 L. Ed. 2d 842 (1971) ("We therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict."); *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) ("In our review, we defer to the Commissioner's resolution of conflicting evidence."); *Aponte v. Secretary, Dep't of Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) ("It is the function of the [Commissioner], not the reviewing courts, to resolve evidentiary conflicts . . . ." (internal citations and alterations omitted)).

ALJs are entitled to consider objective medical evidence including laboratory findings. 20 C.F.R. §416.913(a)(1). An ejection fraction greater than 55% is considered normal. *See McBride-Meyers v. Berryhill*, No. 16-CV-5696 (RLE), 2017 WL 4386374, at *2 n.1 (S.D.N.Y. Sept. 29, 2017) ("A normal heart's ejection fraction is between fifty to seventy percent."); *Mejia v. Astrue*, 719 F. Supp. 2d 328, 342 n.22 (S.D.N.Y. 2010) ("A 'normal' ejection fraction is greater than 55%. By contrast, an ejection fraction between 30% and 40% indicates moderate systolic dysfunction and an ejection fraction below 30% demonstrates severe systolic dysfunction." (citing American Medical Association, *Guides to the Evaluation of Permanent Impairment* at 170; *Sheehan v. Metro. Life Ins. Co.,* 368 F. Supp. 2d 228, 248 n.12 (S.D.N.Y. 2005)); *see also Dorland's Illustrated Medical Dictionary* at 708 (stating that an "ejection fraction" is the "proportion of the volume of blood in the ventricles at the end of diastole that is ejected during systole; it is the stroke volume divided by the end-diastolic volume, often expressed as a percentage"). Low ejection fractions can cause fatigue. *See, e.g., Ahern v. Astrue*, No. 09-CV-5543 JFB, 2011 WL 1113534, at *6 (E.D.N.Y. Mar. 24, 2011) ("Plaintiff's fatigue was presumably caused by low ejection fraction."); *see also Ejection Fraction*, HEART RHYTHM SOCIETY, https://www.hrsonline.org/Patient-Resources/The-Normal-Heart/Ejection-Fraction (last visited May 22, 2018) (stating that fatigue may be associated with a low ejection fraction).

The Plaintiff's ejection fraction was consistent with the findings of Doctor Pollack and Doctor Hormozi, who said that the Plaintiff experienced fatigue upon exertion. Therefore, the ALJ was entitled to rely on the objective medical evidence in the form of diagnostic testing when discounting Dr. Lee's opinion. *See Rodriguez v. Colvin*, No. 15 CIV. 8390 (AJP), 2016 WL 1178780, at *6–*14 (S.D.N.Y. Mar. 25, 2016) (stating that the ALJ "considered Rodriguez' records from Jacobi Medical Center, finding that his ventricular ejection fraction was 'well within

normal limits'" and finding that the ALJ's decision was supported by substantial evidence including the plaintiff's "good post-operative cardiac function, consistently regular heart rate and rhythym" (internal citations to the record omitted)); *Rossow v. Colvin*, No. 14-CV-526S, 2015 WL 5089058, at *4 (W.D.N.Y. Aug. 27, 2015) (finding that the ALJ was entitled to give little weight to the opinion of the plaintiff's treating physician that the plaintiff was disabled due to heart disease because the plaintiff's examinations were unremarkable, and the plaintiff's ejection fraction measured in the normal range); *Felix v. Astrue*, No. 11-CV-3697 KAM, 2012 WL 3043203, at *7 (E.D.N.Y. July 24, 2012) (finding that the ALJ properly discounted the plaintiff's complaints of pain because "his heart was found to have 'good ejection fraction' and 'good wall motion,' and that his cardiac assessment was 'within normal limits.'" (internal citations to the record omitted)); *Townsend v. Comm'r of Soc. Sec.*, No. 11-CV-801 JG, 2011 WL 3648346, at *6 (E.D.N.Y. Aug. 17, 2011) (finding that the ALJ was entitled to discount the opinion of the plaintiff's treating physician where the ALJ considered the record as a whole, including the plaintiff's ejection fraction, which varied between 59% to 61%, and a contradictory medical opinion).

Therefore, the ALJ did not err in affording less weight to the portion of Dr. Lee's opinion regarding breaks and absences because there was substantial evidence showing that the Plaintiff would not require such breaks or absences. Accordingly, the Plaintiff's motion for summary judgment on that basis is denied.

**2. As to Whether the ALJ's Assessment of the Plaintiff's RFC Is Supported By Substantial Evidence**

The Plaintiff contends that the ALJ erred in assessing the Plaintiff's RFC. The Court finds that the ALJ's RFC determination is supported by substantial evidence.

A claimant's RFC is "the most [they] can still do despite [their] limitations. . . . [R]esidual functional capacity [is assessed] based on all the relevant evidence in [a claimant's] case record. 20 C.F.R. § 404.1545(a). At an administrative hearing, the ALJ is responsible for determining a claimant's RFC. 20 C.F.R. § 404.1546(c).

Here, the ALJ found that the Plaintiff is capable of performing sedentary work except that the Plaintiff could only sit for thirty minutes before needing a two minute break to reposition himself; could occasionally bend, squat, crouch, kneel, and crawl; was limited to low stress jobs; and could not be exposed to dangerous heights or machinery.

Sedentary work is defined in the regulations as:

> lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

Determining a claimant's RFC is the sole province of an ALJ. *See* 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level . . . , the administrative law judge . . . is responsible for assessing your residual functional capacity."). While an RFC determination is, to a certain extent, a medical determination, *see Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 347 (E.D.N.Y. 2010), the ultimate RFC determination is left to the ALJ.

Here, the ALJ's RFC determination aligned with the opinions of Dr. Lee, Dr. Pollack and the state agency medical consultant Dr. W. Wells, except for Dr. Lee's opinion regarding breaks and absences. As stated above, it was proper for the ALJ to discount that portion of the opinion as it was not supported by Dr. Lee's treatment notes or the objective medical evidence, and it was contradicted by Dr. Pollack's notes. The ALJ was entitled to weigh all of the relevant medical

evidence in determining the Plaintiff's RFC. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."); *see also* 20 C.F.R. § 404.1545(a)(1) (stating that the Commissioner will "assess [a claimant's] residual functional capacity *based on all the relevant evidence* in [the claimant's] case record." (italics added)). Divergent medical opinions, and conflicting evidence, are for the ALJ to resolve. *See Cage*, 692 F.3d at 122 ("In our review, we defer to the Commissioner's resolution of conflicting evidence."); *Veino v. Barnhart*, 312 F. 3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve."). Therefore, the ALJ's RFC determination is supported by substantial evidence for the same reasons that the ALJ's decision to discount a portion of Dr. Lee's opinion was so supported.

As the Commissioner points out, the sole case cited by the Plaintiff in support of his argument that the ALJ incorrectly found that the Plaintiff is disabled is an out-of-circuit case which held that the ALJ improperly determined that the plaintiff did not suffer from any severe impairments. (*See* Pl.'s Mem. in Supp. of Mot. for Summ. J. at 6 (citing *Conway v. Bowen*, 680 F. Supp. 394 (D.D.C. 1987))). Here, the ALJ found that the Plaintiff suffers from a number of severe impairments. Therefore, *Conway* is not applicable here.

For the same reasons the Court found that Dr. Lee's opinion regarding the Plaintiff's concentration, attention, and need for breaks and absences was not supported by substantial evidence, the Court finds that the ALJ's RFC determination is supported by substantial evidence. The Court again notes that this is a deferential standard—it is not a question of whether the Court would rule in the same manner as the ALJ if the Court were to decide the case *de novo*, *Mollo v.*

*Barnhart*, 305 F. Supp. 2d 252, 260 (E.D.N.Y. 2004) (Spatt, J.) ("[T]he court may not substitute its own judgment for that of the Secretary, even if it might justifiably have reached a different result upon *de novo* review." (quoting *Jones,* 949 F.2d at 59 (internal quotation marks omitted))); or even whether there is substantial evidence to support the Plaintiff's claims, *Bonet*, 523 F. App'x at 59 ("[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision." (citations omitted)). Instead, it is a question of whether substantial evidence supports the Commissioner's decision.

Therefore, the ALJ properly determined the Plaintiff's RFC as it was supported by substantial evidence. Accordingly, the Plaintiff's motion for summary judgment on that basis is denied.

### III. CONCLUSION

For the reasons stated above, the Plaintiff's motion for summary judgment pursuant to Rule 56 is denied in its entirety, and the Commissioner's motion for a judgment on the pleadings pursuant to Rule 12(c) is granted. The Clerk of the Court is respectfully directed to close the case.

**SO ORDERED:**

Dated: Central Islip, New York

June 19, 2018

　　　　　　　　　　　　　　　　　　　___/s/ Arthur D. Spatt_____

　　　　　　　　　　　　　　　　　　　ARTHUR D. SPATT

　　　　　　　　　　　　　　　　　　　United States District Judge